THE HONORABLE BENJAMIN H. SETTLE

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

KATHI M. WALLIS,

                     Plaintiff,

v.

INDYMAC FEDERAL BANK; WELLS
FARGO BANK; REGIONAL TRUSTEE
SERVICES CORPORATION; AND JOHN
DOE,

                  Defendants.

Case No.: 3:09-CV-5500-BHS

DEFENDANT FEDERAL DEPOSIT
INSURANCE CORPORATION, AS
RECEIVER FOR INDYMAC BANK,
F.S.B.'s MOTION TO DISMISS
COMPLAINT, OR IN THE ALTERNATIVE,
MOTION FOR SUMMARY JUDGMENT
UNDER FED. R. CIV. P. 12 AND 56

**NOTE ON MOTION CALENDAR:
APRIL 16, 2010**

## I.      INTRODUCTION

On March 19, 2009, the plaintiff Kathi M. Wallis ("Wallis") filed this lawsuit against

IndyMac Federal Bank F.S.B. in the context of a pending nonjudicial foreclosure proceeding.

Without stating any specific causes of action, Wallis's complaint appears to allege in general

terms that IndyMac Federal Bank F.S.B. did not have authority to prosecute the foreclosure

action and the loan somehow violated the Truth in Lending Act ("TILA").

The Federal Deposit Insurance Corporation, in its capacity as Receiver for IndyMac

Bank, F.S.B. ("FDIC-Receiver I"), by and through its undersigned counsel moves this Court for

MOTION TO DISMISS - 1

BISHOP, WHITE & MARSHALL, P.S.
720 OLIVE WAY, SUITE 1301
SEATTLE, WASHINGTON 98101-1801
206/622.5306 FAX:206/622-0354

an order dismissing plaintiff Kathi Wallis's complaint pursuant to *Fed. R. Civ. P. 12(1) and (6)*, or in the alternative for summary judgment under *Fed. R. Civ. P. 56*.

This motion is based on the following grounds:

1.     The Court lacks subject matter jurisdiction over the complaint, pursuant to *Fed. R. Civ. P. 12 (b)(1)*. The complaint fails to present a justiciable case or controversy as required by Article III of the United States Constitution, because the court cannot provide meaningful relief to the plaintiff due to the worthlessness determinations made by the FDIC-Receiver. Alternatively, the complaint should be dismissed on prudential mootness grounds, because continued litigation of a claim for which no recovery is possible is an exercise in futility.

2.     Based on the plain terms of the Financial Institutions Reform, Recovery and Enforcement Act of 1989, Pub. L. No. 101-73, 103 Stat. 183 ("FIRREA"), as interpreted and applied by the U.S. Court of Appeals for the Ninth Circuit and many other courts, this action must be dismissed for lack of subject matter jurisdiction, because plaintiff has failed to exhaust FIRREA's mandatory administrative claims process.

3.     Plaintiff's general allegation of a violation under the Truth in Lending Act ("TILA") fails to plead sufficient facts to state facts sufficient to constitute a claim for relief pursuant to *Fed. R. Civ. P.* 12 (b)(6), and is barred by the applicable statute of limitations under 15 U.S.C. § 1640(e).

4.     Lastly, plaintiff's claim the foreclosure was somehow improper is waived for failure to enjoin the trustee's sale under RCW 61.24.130, and fails to state facts sufficient to constitute a claim for relief pursuant to *Fed. R. Civ. P.* 12 (b)(6).

## II.     EVIDENCE RELIED UPON

1.     Declaration of David A. Weibel and exhibits attached thereto.

MOTION TO DISMISS - 2

BISHOP, WHITE & MARSHALL, P.S.
720 OLIVE WAY, SUITE 1301
SEATTLE, WASHINGTON 98101-1801
206/622.5306 FAX:206/622-0354

2.     Judicial Notice.  Judicial notice may be taken at any stage of the proceeding.  *ER 201(f)*.  A court shall take judicial notice if requested by a party and supplied with the necessary information.  *ER 201(d)*.  A judicially noted fact must be one not subject to reasonable dispute in that it is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.  *ER 201(b)(2)*.  Judicial notice is sought of the following records:

a.     Office of Thrift Supervision Order No. 2008-24 (Exhibit J).  OTS Order No. 2008-24 wherein on July 11, 2008, the Office of Thrift Supervision closed IndyMac Bank is generally known in the community, capable of accurate and ready determination, and is available to the public at: http://files.ots.treas.gov/680018.pdf;

b.     Purchase and Assumption Agreement (Exhibit K).  The July 11, 2008 Purchase-and-Assumption Agreement among the FDIC in its corporate capacity, FDIC-Receiver and FDIC-Conservator, wherein the bulk of the assets and deposit liabilities of IndyMac Bank were transferred to FDIC-Conservator, is capable of accurate and ready determination, and is available to the public at: http://www.fdic.gov/bank/individual/failed/IndyMac_P_and_A.pdf;

c.     Office of Thrift Supervision Order No.: 2009-17 (Exhibit L);

d.     March 19, 2009, Agreement (Exhibit M).  The agreement among the FDIC in its corporate capacity, FDIC-Receiver II, and OneWest Bank, F.S.B. ("OneWest"), wherein substantially all of the assets and certain liabilities of IndyMac Federal were transferred to OneWest, is capable of accurate and ready determination, and is available to the public at: http://www.fdic.gov/about/freedom/IndyMacLoanSaleAgrmt.pdf;

e.     FDIC Resolution (Exhibit N).  On November 12, 2009, the Board of Directors of the FDIC formally determined that the assets of IndyMac are insufficient to make any

MOTION TO DISMISS - 3

BISHOP, WHITE & MARSHALL, P.S.
720 OLIVE WAY, SUITE 1301
SEATTLE, WASHINGTON 98101-1801
206/622.5306 FAX:206/622-0354

distribution on claims of general unsecured creditors and therefore such claims have no value (the "Worthlessness Determination"), which is capable of accurate and ready determination, and information regarding the Board's resolution is available to the public at: http://www.fdic.gov/bank/individual/failed/IndyMac.html#Possible%20Claims%2;

f.      November 18, 2009, Federal Register, 74 Fed. Reg. 59,540-59,541 (Exhibit O). On November 18, 2009, the FDIC published a notice of the Worthlessness Determination in the Federal Register, 74 Fed. Reg. 59,540-59,541, which is capable of accurate and ready determination, and is available to the public at: http://edocket.access.gpo.gov/2009/pdf/E9-27593.pdf.

## III.      FACTUAL BACKGROUND

### A.      The Plaintiff's Loan.

On February 6, 2007, Scott Wallis and Kathi Wallis, husband and wife, entered into a loan agreement with United Financial Mortgage Corporation in the amount of $577,000.  The agreement was memorialized by an Adjustable Rate Note (the "Note"), with an initial interest rate of 7.85% and a monthly payment of $1,855.36, which provided the payment amount would change, based on changes in the interest rate, beginning the first day of April 2008, and on that date every year thereafter.[1]

The Note was secured by a Deed of Trust executed by Scott Wallis and Kathi Wallis as the Grantors, under which Rainier Title is identified as Trustee, United Financial Mortgage Corporation as the Lender and Beneficiary, and Mortgage Electronic Registration Systems, Inc. ("MERS"), a separate corporation, acting solely as nominee for the Lender.  The Deed of Trust encumbers that certain real property commonly known as 13816 65th Avenue Northwest, Gig

---

[1] Declaration of David A. Weibel, Exhibit A (DOT Adjustable Rate Rider).

MOTION TO DISMISS - 4

1   Harbor, Washington  98392, and legally described as follows:

2           Lot 1, Pierce County Large Lot No. 8312160409, according to map
3           recorded on December 16, 1983, in Pierce County, Washington;
        Except commencing at the Northwest corner of said Lot 1; Thence
4           South 89° 36' 45" West along the North line of said Lot 1 a
        distance of 99.07 feet; Thence South 00° 09' 26" East a distance of
5           130.92 feet; Thence South 42° 58' 17" West a distance of 148.80
        feet; Thence South 89° 28' 18" East 1,101.70 feet to the Southeast
6           corner of said Lot 1; Thence North along the East line of said Lot 1
        256.72 feet to the point of beginning;   TOGETHER WITH
7           easements for access, utilities and maintenance, 30 feet in width
        and 40 feet in width, as delineated on said Large Lot; EXCEPT
8           that portion lying within the above described property.[2]

9           On November 25, 2008, MERS as nominee for the Lender, executed an Assignment of

10  Deed of Trust in favor of IndyMac Federal Bank F.S.B. that was recorded on December 5,

11  2008, under Pierce County Auditor's File No. 200812050566.[3]

12          On November 25, 2008, IndyMac Federal Bank F.S.B. initiated a nonjudicial

13  foreclosure and executed an Appointment of Successor Trustee, recorded December 5, 2008,

14  under Pierce County Auditor's File No. 200812050567, which appointed Regional Trustee

15  Services Corporation ("Regional Trustee") as the Successor Trustee under the Deed of Trust.[4]

16

17          On December 24, 2008, Regional Trustee issued its Notice of Trustee's Sale, alleging

18  Wallis was in default under the terms of her loan, which was recorded under Pierce County

19  Auditor's File No. 200812050566.[5]

20          On March 19, 2009, Plaintiff Kathi M. Wallis filed her Complaint in this action in the

21  Pierce County Superior Court for the State of Washington as Cause No. 09-2-07072-1 (the State

22  Court Action).  Among other things the Complaint sought proof that "IndyMac Federal Bank"

23

24  _____

25  [2] Declaration of David A. Weibel, Exhibit A (DOT).
[3] Declaration of David A. Weibel, Exhibit B (Assignment of Deed of Trust).
[4] Declaration of David A. Weibel, Exhibit C (Appointment of Successor Trustee).
[5] Declaration of David A. Weibel, Exhibit D (Notice of Trustee's Sale).

MOTION TO DISMISS - 5

BISHOP, WHITE & MARSHALL, P.S.
720 OLIVE WAY, SUITE 1301
SEATTLE, WASHINGTON 98101-1801
206/622.5306 FAX:206/622-0354

had authority to prosecute the foreclosure and alleged an unspecified violation of TILA.  On March 26, 2009, Ms. Wallis filed an ex parte motion for TRO that was denied.[6]

On June 19, 2009, the foreclosure Trustee conducted a nonjudicial foreclosure trustee's sale held.  A Trustee's Deed was issued and recorded on August 11, 2009, under Pierce County Auditor's File No. 200908110002, vesting title in Deutsche Bank National Trust Company as Trustee for Alliance 2007-OA1.[7]

On July 22, 2009, the FDIC mailed a Notice to Creditor Proof of Claim to Kathi Wallis.[8]

On August 3, 2009, counsel for the FDIC wrote to Kathis Wallis regarding the Proof of Claim.[9]

On January 14, 2010, counsel for the FDIC wrote to Kathis Wallis regarding the FDIC Board of Director's determination of insufficient assets.[10]

**B.      The IndyMac Bank F.S.B.'s Receivership**

On July 11, 2008, the Office of Thrift Supervision (the "OTS") closed IndyMac Bank F.S.B. ("IndyMac") and appointed the FDIC as its Receiver ("FDIC-Receiver I") pursuant to 12 U.S.C. §1464(d)(2)(A) and §1821(c)(5).  On that same date, the OTS authorized the creation of a new institution, IndyMac Federal Bank, FSB ("IndyMac Federal") and appointed the FDIC as Conservator for IndyMac Federal ("FDIC-Conservator").[11]

Also on July 11, 2008, pursuant to a Purchase and Assumption Agreement among the FDIC in its Corporate capacity, FDIC-Receiver I and FDIC-Conservator, the bulk of the assets of IndyMac were transferred to FDIC-Conservator, which carried on the operations of IndyMac

---

[6] Declaration of David A. Weibel, Exhibit E (TRO)
[7] Declaration of David A. Weibel, Exhibit F (Trustee's Deed).
[8] Declaration of David A. Weibel, Exhibit G (7-22-09 FDIC letter).
[9] Declaration of David A. Weibel, Exhibit H (8-3-09 letter).
[10] Declaration of David A. Weibel, Exhibit I (1-14-10 letter).
[11] Declaration of David A. Weibel, Exhibit J (OTS Order No. 2008-24).

MOTION TO DISMISS - 6

Federal. However, the transfer to FDIC-Conservator did not include liabilities for claims against IndyMac, which remained with FDIC-Receiver 1.[12]

On March 19, 2009, the OTS closed IndyMac Federal and appointed the FDIC as Receiver for IndyMac Federal ("FDIC-Receiver II").[13] Also on March 19, 2009; pursuant to an agreement among the FDIC in its Corporate capacity, FDIC-Receiver II, and OneWest Bank, FSB ("OneWest Bank"), substantially all of the assets and certain liabilities of IndyMac Federal were transferred to OneWest Bank.[14]

On November 12, 2009, the Board of Directors of the FDIC formally determined that the assets of IndyMac are insufficient to make any distribution on claims of general unsecured creditors, and therefore such claims have no value (the "Worthlessness Determination").[15] In particular, the Board of Directors of the FDIC determined that the total assets of the IndyMac Receivership are $63.131 million while total deposit liabilities are $8.738 billion. Because the IndyMac Receivership has insufficient assets to satisfy even deposit liabilities, there are plainly no assets available for distribution to IndyMac's general creditors.

In addition, the Board of Directors of the FDIC determined that the IndyMac Federal Receivership has total assets of $5.285 billion, an amount that is insufficient to satisfy the administrative expenses of the IndyMac Federal Receivership, which total $7.964 billion.[16] Because the IndyMac Federal Receivership has insufficient assets to satisfy even administrative expenses and there are no assets available for distribution to IndyMac Federal's general creditors, claims such as Ms. Wallis' have been deemed valueless.

---

[12] Declaration of David A. Weibel, Exhibit K (Purchase and Assumption Agreement).
[13] Declaration of David A. Weibel, Exhibit L (OTS 2009-17).
[14] Declaration of David A. Weibel, Exhibit M (OneWest Agreement).
[15] Declaration of David A. Weibel, Exhibit N (FDIC Resolution).
[16] Declaration of David A. Weibel, Exhibit O (FDIC Resolution).

MOTION TO DISMISS - 7

On November 18, 2009, the FDIC published a notice of the Worthlessness Determination in the Federal Register.[17]  The FDIC has provided notice by mail to all general unsecured creditors, including plaintiff, that their claims have no value.[18]

## IV.    ARGUMENT

### A.    Standard

Plaintiff's action should be dismissed pursuant to both *Fed. R. Civ. P. 12 (b)(1)* and *Fed. R. Civ. P. 12 (b)(1)*.  On a motion to dismiss, all facts alleged in the complaint should be considered as true in determining whether plaintiff's complaint states any cause of action against. *Geraci v. Homestreet Bank,* 347 F. 3d 749, 751 (9th Cir. 2003).  However, the Court is not limited to the matters set forth in the complaint, but may consider matters which may be judicially noticeable, including court records.  ER 201.

Alternatively, as provided for under *Fed. R. Civ. P. 12(d)* when matters outside the pleadings are considered, defendant moves for this case to be dismissed as a matter of law pursuant to *Fed. R. Civ. P. 56*.  The law of summary judgment is well settled and familiar.  *Fed. R. Civ. P. 56* provides in relevant part, that "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law."  See also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A genuine issue of material fact does not exist where there is insufficient evidence for a reasonable fact-finder to find for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In order to defeat a motion for summary judgment, the non-moving party

---

[17] Declaration of David A. Weibel, Exhibit O (Fed Reg. Notice).

MOTION TO DISMISS - 8

bears the burden of making more than conclusory allegations, speculation or argumentative assertions that material facts are in dispute. *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 890 (9th Cir. 1994). Summary judgment is appropriate here as there are no material facts in dispute and defendant is entitled to judgment as a matter of law.

> **B.    This Court Lacks Jurisdiction to Hear Ms. Wallis's Claims  Because She Failed to Exhaust the Congressionally Mandated Administrative Claim Process.**

Dismissal of the Complaint pursuant to Rule 12(b)(1) is appropriate because plaintiff has not exhausted the claims process set forth in 12 U.S.C. § 1821(d)(3) to (13). In the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub. L. No. 101-73, 103 Stat. 183 ("FIRREA"), Congress enacted a comprehensive statutory scheme granting the FDIC authority to act as Receiver for failed financial institutions and special powers to carry out that function. The FDIC, as Receiver, is tasked with preserving and liquidating a failed institution's assets and using the proceeds of liquidation to make distributions to legitimate depositors and creditors. *See* 12 U.S.C. §§ 1821(d)(2)(A)(ii); 1821(d)(2)(B) & (E).

As part of the FIRREA mechanism for winding up failed financial institutions, Congress created a statutory procedure for the orderly and efficient processing of claims. That claims process, set forth in Section 1821(d)(3) through (13), centralizes the initial consideration and resolution of claims against a failed financial institution by requiring that all claims be submitted to the FDIC within 90 days of the FDIC's mailing of a claims form. 12 U.S.C. § 1821(d)(3)(B). Upon receipt of a claim, the FDIC has up to 180 days to review the claim, and grant or deny it (in whole or in part), without the delay and expense of litigation. *See* 12 U.S.C. § 1821(d)(5)(A)(i).

[18] See Declaration of David A. Weibel, Exhibit I.

MOTION TO DISMISS - 9

Section 1821(d)(13)(D) provides that this claims process is a *mandatory prerequisite to judicial review*. During the claims process, the courts do not have jurisdiction over claims against a failed institution for which the FDIC has been appointed receiver. *See McCarthy v. FDIC*, 348 F.3d 1075, 1077 (9th Cir. 2003). As stated in FIRREA:

> Except as otherwise provided in this subsection, *no court shall have jurisdiction over-*
>
> (i) *any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the [FDIC] has been appointed receiver*, including assets which the [FDIC] may acquire from itself as such receiver; or (ii) any claim relating to any act or omission of such institution or the [FDIC] as receiver.

12 U.S.C. § 1821(d)(13)(D) (emphasis added). The phrase "except as otherwise provided in this subsection" refers to a provision that allows jurisdiction in the courts after the administrative claims process has been completed. *McCarthy*, 348 F.3d at 1078. As explained by the Ninth Circuit, FIRREA's exhaustion requirement "applies to *any* claim or action respecting the assets of a failed institution for which the FDIC is receiver." *Id.* at 1081. The exhaustion requirement is so broad that it extends to post-receivership claims arising out of acts by the Receiver as well as the failed institution. *Id.*

In *McCarthy*, the Ninth Circuit affirmed the court's dismissal of an action for damages in which the plaintiff complained of the way in which the FDIC handled a loan that the plaintiff was negotiating with a failed institution. *Id.* at 1076. In that case, the plaintiff, a mortgagor, sought a declaration that the FDIC and the failed institution violated fiduciary duties they owed him and caused him monetary damages that should be offset against his loan with the failed institution. *Id.* at 1077. The district court dismissed plaintiff's action pursuant to Rule 12(b)(1), because under Section 1821(d)(13)(D), the court lacked jurisdiction to hear any claims that the

BISHOP, WHITE & MARSHALL, P.S.
720 OLIVE WAY, SUITE 1301
SEATTLE, WASHINGTON 98101-1801
206/622.5306 FAX:206/622-0354

1   plaintiff failed to exhaust through FIRREA. *Id*. at 1081.  Here, the result should be the same.

2   Ms. Wallis has not exhausted the mandated administrative claim process before bringing this

3   action, therefore, this action should be dismissed for want of jurisdiction.

4   ### C.    The FDIC's Worthlessness Determination Means That There is No Possibility of Plaintiff Ever Recovering From the FDIC-Receiver

5

6   As a matter of law, Plaintiff may be entitled to recover from the FDIC-Receiver only the

7   amount she would have received upon IndyMac's liquidation.  *See* 12 U.S.C. § 1821(i)(2).  The

8   FDIC's Worthlessness Determination conclusively establishes that there are insufficient assets

9   in the Receivership estate to make any distribution to IndyMac's general creditors, including

10  Plaintiff.  Because there is no longer any circumstance under which this action could remedy the

11  harm about which Plaintiff complains - even if Plaintiff were to prevail on the merits - the

12  action has become moot and must be dismissed for lack of subject matter jurisdiction.

13  In the FIRREA, Congress expressly limited the liability of the FDIC as Receiver for a

14  failed financial institution, such as IndyMac, to the assets of the receivership estate.  *See* 12

15  U.S.C. § 1821(i)(2); *First Indiana Fed. Sav. Bank v. FDIC*, 964 F.2d 503, 507 (5th Cir. 1992);

16  *see also Tri-Continent Int'l Corp. v. Paris Savings & Loan Assn.*, 12 Cal.App.4th 1354, 1359,

17  16 Cal.Rptr.2d 508 (1993).

18

19  This limitation reflects Congress' policy judgment that creditors of a failed depository

20  institution should "look only to the assets of the institution for recovery of their losses, and not

21  to the taxpayers."  *First Indiana*, 964 F.2d at 507.  Where there are insufficient receivership

22  assets to satisfy general creditors' claims, 12 U.S.C. § 1821(i)(2) mandates that general creditors

23  receive nothing.  *Id.*; *see also McNeily v. United States*, 839 F. Supp. 426, 429 (N.D. Tex.

24  1992).

25  The FDIC Board of Directors has formally determined that general unsecured claims

BISHOP, WHITE & MARSHALL, P.S.
720 OLIVE WAY, SUITE 1301
SEATTLE, WASHINGTON 98101-1801
206/622.5306 FAX:206/622-0354

upon the assets of the IndyMac Bank receivership have no value because there are insufficient assets in the receivership estate to make any payments to any general unsecured claimants, including Plaintiff.  Thus, Plaintiff can recover nothing from the FDIC Receiver because there are not, and never will be, sufficient assets to pay any claim below the depositor priority level. *See, e.g., First Indiana*, 964 F.2d at 507 ("[T]here are no set of circumstances under which [plaintiff] can recover any money or property [from receivership estate] as a result of [unsecured] claims."); *AmWest Sav. Ass'n v. Farmers Market of Odessa*, 753 F. Supp. 1339, 1346 (W.D. Tex. 1990) (following "no value" determination, "no possibility exists the FDIC will ever recover any funds in the future which would be available for distribution to unsecured creditors").

Even if Plaintiff was to prevail against the FDIC Receiver in this action, she would remain a general unsecured creditor of the IndyMac Bank receivership estate and "would not be entitled to any recovery."  *Village S. Joint Venture v. FDIC*, 733 F. Supp. 50, 51 (N.D. Tex. 1990); *see also, FDIC v. Kooyomjian*, 220 F.3d 10 (1st Cir. 2000) (district court properly granted summary judgment where FDIC's no value determination "precludes any relief for [claimants] even i[f] they were successful . . . and obtained favorable judgment"); *Adams v. RTC*, 927 F.2d 348, 354 (8th Cir. 1991) (affirming dismissal on prudential mootness grounds, because in light of Bank Board worthlessness determination, FSLIC "will never have any assets with which to satisfy" a judgment).

D.     **The Court Lacks Subject Matter Jurisdiction Because Plaintiff's Claim is Moot As No Effective Relief Can be Granted to Plaintiff**

Article III of the United States Constitution grants federal courts jurisdiction to decide only actual "Cases" or "Controversies."  *See* U.S. Const. Art. III, § 2; *Gator.com Corp. v. L.L. Bean, Inc.*, 398 F.3d 1125, 1128 (9th Cir. 2005) (noting that it is "an inexorable command of the

MOTION TO DISMISS - 12

BISHOP, WHITE & MARSHALL, P.S.
720 OLIVE WAY, SUITE 1301
SEATTLE, WASHINGTON 98101-1801
206/622.5306 FAX:206/622-0354

United States Constitution that the federal courts confine themselves to deciding actual cases and controversies"). *Church of Scientology of Calif. v. United States*, 506 U.S. 9, 12 (1992). "Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies." *Iron Arrow Honor Society v. Heckler*, 464 U.S. 67, 70 (1983). The Constitution permits courts to decide only "actual controversies by [a] judgment which can be carried into effect." This limited grant of jurisdiction bars federal courts from rendering "opinions upon moot questions or abstract principles of law which cannot affect the matter[s] in issue in the case[s] before [them]." *Mills v. Green*, 159 U.S. 651, 653 (1895).

A court "cannot take jurisdiction over a claim as to which no effective relief can be granted." *United States v. Geophysical Corp. of Alaska*, 732 F.2d 693, 698 (9th Cir. 1984). Even when circumstances change after the filing of a lawsuit such that a court is no longer able to grant meaningful relief, the case is moot and must be dismissed for lack of subject-matter jurisdiction. *See, e.g, Iron Arrow Honor Society v. Heckler*, 464 U.S. at 70-71, 73 (ordering dismissal of case as "moot" where "no resolution of the . . . dispute between the parties c[ould] redress" the plaintiff's claims); *see also id.* at 70 ("Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies.").

Based on these principles, courts have consistently dismissed claims against the FDIC as Receiver for lack of jurisdiction where, as here, the Receivership estate has insufficient assets to satisfy the claims against it. *See Heinrichs v. Valley View Dev.*, 474 F.3d 609, 615 (9th Cir. 2007) (dismissing for lack of subject matter jurisdiction claims against FDIC as Receiver where "[n]o assets remain[ed] in the receivership to satisfy [the plaintiff's] claim, thus rendering the claim moot"); *Kooyomjian*, 220 F.3d 10, 15 (1st Cir. 2000) (holding that claims against FDIC-

BISHOP, WHITE & MARSHALL, P.S.
720 OLIVE WAY, SUITE 1301
SEATTLE, WASHINGTON 98101-1801
206/622.5306 FAX:206/622-0354

Receiver failed to satisfy Article III's case or controversy requirement where "[t]he FDIC's worthlessness determination . . . preclude[d] any meaningful relief for [claimants] even i[f] they were successful . . . and obtained favorable judgment"); *First Indiana*, 964 F.2d at 507 (worthless claims against receivership of savings association were not "susceptible of redress by any court" and were therefore moot claims that did not constitute case or controversy under Article III); *Adams v. RTC*, 927 F.2d at 354 (worthless claim against receivership did not "satisfy the case or controversy requirement of Article III" because it was not "redressable by favorable judicial decision").

As in the cases cited above, because there is no possibility of Plaintiff ever being able to recover against the FDIC-Receiver, there is no actual case or controversy presented in this matter, and Plaintiff's claim should be dismissed for lack of subject matter jurisdiction.  As the FDIC's worthlessness determination demonstrates, the IndyMac Receivership estate does not now, nor ever will, have sufficient assets to satisfy claims of general creditors, including Plaintiff's claim.

E.    **Even if Some Theoretical Case or Controversy Exists, Plaintiff's Claim Should be Dismissed on Prudential Mootness Grounds Because No Practical Relief Can be Granted.**

Where "common sense or equitable considerations" justify "a decision not to decide a case on the merits," a court may dismiss claims under the doctrine of prudential mootness, even if those claims are within the court's Article III jurisdiction.  *AOV Indus., Inc. v. Hawley Fuel Coalmart, Inc.*, 792 F.2d 1140, 1147 (D.C. Cir. 1986); *see also Franks v. Bowman Transp. Co.*, 424 U.S. 747, 756 n.8 (1976) (court may refuse decision on merits of case "confessedly within [its] jurisdiction" where "policy rather than purely constitutional considerations" warrant dismissal on mootness grounds).  Thus, "[e]ven if a court has jurisdiction under Article III to

MOTION TO DISMISS - 14

decide a case, prudential concerns may militate against the use of judicial power," and "the court should treat the case as moot for prudential reasons." *Ali v. Cangemi*, 419 F.3d 722, 724 (8th Cir. 2005).

Under the doctrine of prudential mootness, claims should be dismissed where "there is no practical purpose in requiring their adjudication on the merits." *First Indiana*, 964 F.2d at 507. Such circumstances exist if it would be impossible for the court to "grant relief that would affect the parties and redress the plaintiff's alleged wrongs." *Id.*; *see also In re Roberts Farms, Inc.*, 652 F.2d 793, 797 (9th Cir. 1981) (dismissing claim against bankruptcy estate on prudential mootness grounds where reorganization plan had been "so far implemented that it would be impossible to fashion effective relief").

Here, there is no reason to further litigate Plaintiff's claim against the FDIC-Receiver because there is zero possibility that Plaintiff will obtain any recovery, even if she prevails on her claim. Under these identical circumstances, courts have routinely dismissed claims against the Receiver on prudential mootness grounds. *See, e.g.*, *281-300 Joint Venture v. Onion*, 938 F.2d 35, 38-39 (5th Cir. 1991) (holding that dismissal of claims against the RTC as Receiver was warranted "on prudential grounds" where it was determined that general-creditor claims against the receivership were worthless); *Adams*, 927 F.2d at 354 ("We agree with the district court's decision declaring the claim moot on prudential grounds because the Bank Board's determination that [the failed institution's] assets were insufficient to meet the claims of general creditors meant that the court could not grant subordinate debt holder [plaintiff] any effectual relief.").

In *RTC v. Greenwood*, the Court struck the indemnification defense against RTC as Receiver under "the doctrine of prudential mootness" where the receivership "had no assets to

MOTION TO DISMISS - 15

1    grant relief on." 798 F. Supp. 1391, 1399 (D. Minn. 1992); *see also McNeily*, 839 F. Supp. at

2    429 ("[T]he Bank Board's determination of worthlessness evidences the impossibility of

3    effective relief, and is sufficient to support dismissal on prudential mootness grounds.");

4    *AmWest*, 753 F. Supp. At 1347 (dismissing claims against FDIC as Receiver where "there

5    would never be any assets in the . . . receivership estate to satisfy any judgment" and thus, "even

6    if [the court] were to enter judgment for money damages against the FDIC/Receiver, the

7    judgment would never be collectible"); *Morgan v. Heights Sav. Assoc.*, 741 F. Supp. 620, 621

8    (E.D. Tex. 1990) (dismissing claims against FDIC as Receiver on grounds of prudential

9    mootness where it was determined that general-creditor claims against the receivership were

10   worthless); *Village S. Joint Venture*, 733 F. Supp. at 52 (dismissing claims against FDIC as

11   Receiver were, "even if [plaintiff] were to obtain judgment in th[e] case, it would not be entitled

12   to any recovery" because the receivership's "deposit and secured liabilities far exceed[ed] its

13   assets"); *FDIC v. Browning*, 757 F. Supp. 772, 773 (N.D. Tex. 1989) (dismissing claims against

14   FDIC as Receiver where the court could "not legally enter a judgment against the FDIC in favor

15   of [plaintiff] for any amount of money damages"); *Stevenson v. Locke*, 716 F. Supp. 981, 982

16   (S.D. Tex. 1989) (dismissing claims against FDIC  as Receiver where "the failed institution's

17   assets were insufficient to cover its liabilities to its secured creditors and depositors," and

18   therefore "there [wa]s nothing for the plaintiff to recover").

19          These courts have recognized that, where adjudication on the merits "will never result"

20   in the plaintiff obtaining the relief he seeks, "a trial on the merits would be a completely hollow

21   act." *First Indiana*, 964 F.2d at 507.  In this case, as in *First Indiana*, a trial on the merits would

22   be a "completely hollow act," wasting the time and resources of the parties and the Court.  *First*

23   *Indiana*, 964 F.2d at 507.

BISHOP, WHITE & MARSHALL, P.S.
720 OLIVE WAY, SUITE 1301
SEATTLE, WASHINGTON 98101-1801
206/622.5306 FAX:206/622-0354

This is not a case where a defendant simply lacks means currently to satisfy a judgment against it.  Here, Plaintiff will never be entitled to the relief she seeks, because Congress has limited FDIC-Receiver's liability to the assets of the IndyMac Receivership estate and there are no such assets with which to pay Plaintiff.  *See Adams*, 927 F.2d at 354 (distinguishing between cases where there is a possibility that the defendant will lack means to satisfy a judgment, which are not moot, and cases where the defendant "will *never* have any assets with which to satisfy a . . . judgment," which are moot)(emphasis in original).

Moreover, aside from this action, the FDIC-Receiver is currently defending against many other suits, throughout the country, in which general-creditor plaintiffs are attempting to recover from the IndyMac Receivership estate.  Those plaintiffs, like Ms. Wallis here, will be unable to recover any amounts from the Receivership estate.  *See FSLIC v. Locke*, 718 F. Supp. 573, 587 (W.D. Tex. 1989)(taking into account the "hundreds of [pending] lawsuits filed by claimants seeking to become unsecured creditors" in dismissing claims against the FSLIC as Receiver on prudential-mootness grounds).  Just like in those cases, a resolution on the merits of this case would "require enormous expenditures of time and resources by all parties" as well as the Court, "but w[ould] serve no practical purpose."  *Id.*; *see also Stevenson*, 716 F. Supp. at 982 ("[T]he benefits, if any, to be derived from adjudicating the plaintiff's worthless claims are greatly outweighed by the expense of litigation.").

Accordingly, Plaintiff's claim should be dismissed on prudential mootness grounds because the claim is futile.

F.    **Plaintiff's Claim Alleging a Violation of TILA Fails to State Facts Sufficient to Constitute a Claim for Relief Because As An Involuntary Assignee, the FDIC-Receiver is Exempt from TILA Damages Under the Plain Language of 15 U.S.C. §1641(a)**

Without state a specific cause of action, plaintiff generally alleges the subject loan

somehow violates TILA.  The Court should dismiss Plaintiff's claim based on TILA, because only voluntary assignees are subject to claims for damages under TILA based upon violations committed by their assignors.  *See* 15 U.S.C. § 1641(a).  Section 1641(a) – labeled "Prerequisites" – provides, in relevant part:

> [A]ny civil action for a violation of [TILA] which may be brought against a creditor may be maintained against any assignee of such creditor only if the violation for which such action or proceeding isbrought is apparent on the face of the disclosure statement, *except where the assignment was involuntary*.

*Id.* (Emphasis added).

The involuntary assignee exclusion in Section 1641(a), in its current form, was added to TILA through the *1980 TIL Simplification Act*. *See Truth in Lending Simplification and Reform Act*, Pub. L. No. 96-221, § 616, 94 Stat. 168, 182 (1980) (attached to Appendix of Authorities as Ex. C).  But the rule that TILA liability attaches only to voluntary assignments has been a key feature of the Act since its inception in 1968. *See Consumer Credit Protection Act*, Pub. L. No. 90-321, § 130(d) (1968), 1968 U.S.C.C.A.N. (82 Stat.) 176, 189-90 (attached to Appendix of Authorities as Ex. A).  Since 1968, Congress has steadfastly maintained its historic position that only voluntary assignees are subject to TILA liability. *See* R. Rohner & F. Miller, *Truth in Lending* 12.06[2][d], at 857 (2000)(explaining that the rule against imposing TILA liability on any but voluntary assignees "was the rule under the TIL Act as first enacted, and there is no indication that Congress meant to change it").  Congress expressly reaffirmed that position in 1995, when it added subparagraph (e) to section 1641. *See Truth in Lending Act Amendments of 1995*, Pub. L. No. 104-29, § 7, 109 Stat. 271, 274 (1995) (attached to Appendix of Authorities as Ex. B).  That provision applies to TILA mortgage loans, and reiterates that a TILA action will lie against an assignee "*only if* . . . the assignment to the assignee was voluntary." 15 U.S.C.

BISHOP, WHITE & MARSHALL, P.S.
720 OLIVE WAY, SUITE 1301
SEATTLE, WASHINGTON 98101-1801
206/622.5306 FAX:206/622-0354

§ 1641(e) (emphasis added).

In accordance with the statute's plain language, federal banking regulators have construed 15 U.S.C. § 1641 to impose liability only on voluntary assignees. The Federal Reserve Board ("FRB") explains in its *Consumer Compliance Handbook* that TILA claims may be brought against assignees, "except when the assignment was involuntary." FRB *Consumer Compliance Handbook, Credit-Related Regs. and Statutes, Regulation Z, Miscellaneous Provisions* 21 (2008). The FRB's interpretation of TILA applying only to voluntary assignees is consistent with the plain language of TILA.

The FDIC-Receiver is an *involuntary* assignee, because it was required by federal law to accept its appointment as Receiver for IndyMac. Under 12 U.S.C. § 1821(c)(2)(A)(ii), when the FDIC is appointed as Receiver by the "appropriate Federal banking agency" for purposes of liquidating or winding up the affairs of an insured Federal depository institution, the FDIC is required to accept such appointment. *See FDIC v. Bank of Boulder*, 911 F.2d 1466, 1470 (10th Cir. 1990) ("When a state bank fails and FDIC is tendered the appointment as Receiver, it is statutorily obligated to accept the appointment."); *see also* 12 U.S.C. § 1813(q)(4) (providing that the OTS is the "appropriate Federal banking agency" for "savings banks," as defined in 12 U.S.C. § 1813(g)). There was no consensual or voluntary "assignment" of any kind between IndyMac and the FDIC-Receiver. Therefore, as an involuntary assignee, the FDIC-Receiver is exempt from TILA damages under the plain language of 15 U.S.C. §1641(a). *See* 15 U.S.C. § 1641(a).

**G.    Plaintiff's Alleged TILA Violation is Barred by the Statute of Limitations**

In addition, Plaintiff's TILA claim is barred by the statute of limitations. In the Ninth Circuit, the one-year statute of limitations period under 15 U.S.C. § 1640(e) of TILA runs from

the date the loan transaction is consummated.  *See King v. State of California*, 784 F.2d 910, 915 (9th Cir. 1986).  The Ninth Circuit has held equitable tolling of civil damages claims brought under TILA may be appropriate "in certain circumstances" such as when a borrower might not have had a reasonable opportunity to discover the nondisclosures within the one-year period.  *Id.*  Here, Plaintiff's refinance of the loan occurred on February 6, 2007, more than two years prior to the complaint being filed.  Therefore, the complaint was filed beyond the statute of limitations.  In addition, Plaintiff has not plead facts demonstrating entitlement to equitable tolling, as there are no factual allegations to suggest that IndyMac's actions prevented Plaintiff from discovering the claimed violation(s) within the statutory period.  Thus, the claim must be dismissed with prejudice.

**H.     Any Equitable Relief Sought is Precluded under 12 U.S.C. § 1821(j)**

To the extent plaintiff seeks an equitable remedy under TILA, such as rescission, that claim is also barred by operation of law.  In 12 U.S.C. § 1821(j), Congress withdrew jurisdiction from all courts to take any action that would restrain or affect the Receiver in the exercise of its statutory powers and functions.  Section 1821(j) provides that: "Except as provided in this section, *no court may take any action*, except at the request of the Board of Directors by regulation or order, *to restrain or affect* the exercise of powers or functions of the Corporation as a conservator or a receiver" (emphasis added).

The Ninth Circuit has expressly held that Section 1821 (j) prohibits courts from granting the relief of rescission against the FDIC as Receiver.  *See Sahni v. American Diversified Partners*, 83 F.3d 1054, 1059 (9th Cir. 1996)("The granting of Sahni's request in the present case to rescind the asset sales by the FDIC would constitute an improper judicial restraint on the FDIC in violation of [12 U.S.C.] § 1821(j).").  "[T]he breadth of the FDIC's statutory powers as

a receiver . . . was 'designed to give the FDIC power to take all actions necessary to resolve the problems posed by a financial institution in default.'" *Id.* at 1058 (quoting H.R. Rep. No. 54(I), 101st Cong., 1st Sess. 2 (1989), reprinted in 1989 U.S.C.C.A.N. 86, 126 (1989)).

"Essential to these enumerated powers is the FDIC's ability to carry out its basic functions as a receiver free from judicial restraint, pursuant to 12 U.S.C. § 1821 (j)." *Sahni*, 83 F.3d at 1058 (citing to *Ward v. Resolution Trust Corp.*, 996 F.2d 99, 102-04 (5th Cir.1993) stating that the RTC is free to liquidate receivership assets without being encumbered by the possibility of injunctive actions, and further explaining that rescission is even more problematic than aninjunction).   In *Ward*, the court held that "[l]ike injunction, rescission is a 'judicial restraint' that is barred by 1821(j)," and that the district court had "no jurisdiction to enjoin *or rescind* the sale." 996 F.2d at 104 (emphasis in original).   Where Congress has specifically prohibited injunctive relief, the courts may not disregard the express terms of the statute. *Bd. Of Governors v. MCorp Fin., Inc.*, 502 U.S. 32, 44 (1991).

The First, Fifth, Eighth, and D.C. Circuits have also expressly held that Section 1821(j) prohibits courts from granting the relief of rescission against the FDIC as Receiver.  *See Tri-State Hotels, Inc. v. F.D.I.C.,* 79 F.3d 707, 715 (8th Cir. 1996) (under Section 1821 (j), rescinding mortgage documents "would act as an impermissible restraint on the ability of the FDIC to exercise its powers as receiver"); *Lloyd v. FDIC*, 22 F.3d 335, 336-37 (1st Cir. 1994) (claims for reformation or rescission "lie in the maw of [Section 1821(j)], for, in the statutory parlance, the plaintiff's complaint 'seeks a determination of rights with respect to [] the assets of a [ ] depository institution for which the Corporation has been appointed receiver." 12 U.S.C. § 1821(d)(13)(D)"); *Conroy v. FDIC*, 1995 WL 598961 (D. Mass. Sept. 15, 1995), aff'd, 141 F.#d 1149 (1st Cir. 1998); *281-300 Joint Venture*, 938 F.2d at 39; *National Trust for Historic*

MOTION TO DISMISS - 21

*Preservation v. FDIC,* 21 F.3d 469, 472 (D.C. Cir. 1994)(Section 1821(j) bars declaratory relief, injunction and rescission against Receiver); *United Liberty Life Ins. Co. v. Ryan*, 985 F.2d 1320, 1329 (6th Cir. 1993) (holding that the plaintiff's request for a judicial order rescinding sales transaction of receivership assets would "limit RTC's exercise of power as a receiver . . . [and] the district court lacked the jurisdiction to issue such an order").

Eleven U.S. Courts of Appeals, in at least 23 separate decisions, have held that 12 U.S.C. § 1821(j) means exactly what it says - courts lack jurisdiction to grant any form of equitable relief that would restrain or affect the Receiver's exercise of its statutory powers and functions. *See Sahni,* 83 F.3d 1054; *Bursik v. One Fourth St. N., Ltd., 84 F.3d 1395,* 1397 (11th Cir. 1996) (Section 1821(j) "has been interpreted [by the other circuits] to restrict injunctions, and other equitable relief, against the RTC when the RTC acts as a receiver or conservator); *Tri-State Hotels*, 79 F.3d at 715 (court lacks jurisdiction under section 1821(j) to grant rescission of purchase agreements and loan documents because "rescinding the agreements would act as an impermissible restraint on the ability of the FDIC to exercise its powers as receiver").

In *Freeman v. FDIC*, the court states that, "Section 1821(j) does indeed effect a sweeping ouster of courts' power to grant equitable remedies to parties like the Freemans." 56 F.3d 1394, 1399 (D.C. Cir. 1995); *see also Lloyd*, 22 F.3d at 336 ("A 'district court lacks jurisdiction to enjoin the FDIC when the FDIC is acting pursuant to its statutory powers as receiver' . . . 12 U.S.C. § 1821(j)") (quoting *Telematics Int'l, Inc. v. NEMLC Leasing Corp.*, 967 F.2d 703, 707 (1st Cir. 1992)); *Heno v. FDIC*, 20 F.3d 1204, 1208 n.8 (1st Cir. 1994) ("We need not reconsider our earlier holding that the district court lacked jurisdiction over Heno's claim for injunctive relief, a claim expressly barred by § 1821(j) . . ."); *Carney v. RTC*, 19 F.3d 950, 956 (5th Cir. 1994) ("[I]f [the defendants] are attempting to enjoin the RTC from exercising an

BISHOP, WHITE & MARSHALL, P.S.
720 OLIVE WAY, SUITE 1301
SEATTLE, WASHINGTON 98101-1801
206/622.5306 FAX:206/622-0354

authorized power or function of the RTC, then § 1821(j) deprives the district court of subject matter jurisdiction over the action."); *Courtney v. Halleran*, 485 F.3d 942, 948 (7th Cir. 2007), *cert. denied*, 128 S. Ct. 1256 (2008) ("The glaring problem with the plaintiffs' overall position" that the court should interfere with an FDIC agreement concerning distribution of litigation proceeds "lies in the anti-injunction language of § 1821(j)."); *Volges v. RTC*, 32 F.3d 50, 53 (2d Cir. 1994) (12 U.S.C. § 1821(j) precludes equitable remedies); *Rosa v. RTC*, 938 F.2d 383 (3d Cir. 1991).

Based on the overwhelming authority interpreting and applying 12 U.S.C. § 1821(j), it is clear that any interpretation of Plaintiff's complaint as seeking rescission, or for that matter, restitution, injunctive or declaratory relief may not be granted against the FDIC-Receiver.

## I.    Plaintiff Waived Any Claims She May Have By Failing to Enjoin the Trustee's Sale

The Deed of Trust Act includes a specific procedure for stopping a trustee's sale so that an action contesting a foreclosure can take place.  RCW 61.24.130(1) provides that an interested party may move to restrain a trustee's sale "on any proper ground."  Under Washington law, a borrower waives any claims they may have associated with the underlying obligation or with the foreclosure process if they fail to enjoin the trustee's sale as provided under RCW 61.24.130.  *Brown v. Household Realty Corp.*, 146 Wn. App. 157, 189 P.3d 233 (2008) *rev. denied* (2009); *Steward v. Good*, 51 Wn. App. 509, 515, 754 P.2d 150, *review denied*, 111 Wn.2d 1004 (1988).  In *Plein v. Lackey*, the Supreme Court held that waiver of any post-sale contest occurs where a party (1) received notice of the right to enjoin the sale, (2) had actual or constructive knowledge of a defense to foreclosure prior to the sale, and (3) failed to bring an action to obtain a court order enjoining the sale.  *Plein v. Lackey* 149 Wn.2d at 227-229, 693 P.2d 683 (2003). See also *Plein v. Lackey*, 149 Wn.2d 214, 225-226 (2003) (citing *Cox v.*

BISHOP, WHITE & MARSHALL, P.S.
720 OLIVE WAY, SUITE 1301
SEATTLE, WASHINGTON 98101-1801
206/622.5306 FAX:206/622-0354

*Helenius*, 103 Wn.2d 383, 387, 693 P.2d 683 (1985).  For example, in *Brown*, the court found a

borrower under a deed of trust waived claims against lender for fraud, breach of covenant of fair

dealing, breach of fiduciary duty, and violations of consumer protection statutes, by failing to

request a preliminary injunction or restraining order enjoining nonjudicial foreclosure sale of

their property at least five days before the sale date, pursuant to Deed of Trust Act.  *Brown* 146

Wn. App. at 162.

Here, plaintiff filed this suit prior to the trustee's sale and the plaintiff failed to obtain an

order enjoining the sale prior to the trustee's sale date.[19]  Because plaintiff had actual notice of

the foreclosure sale and notice of her claims and failed to pursue the presale remedies provided

by the Deed of Trust Act, any post-sale claims to the nonjudicial foreclosure are barred.

J.      **The Foreclosure Trustee is Not Required to Possess the Original Note to
        Prosecute a Foreclosure**

Under RCW 61.24 et seq. the foreclosure trustee is not required to possess the original

note and deed of trust.  Without citing to a particular Washington statute, however, plaintiff

argues the Uniform Commercial Code 3-309 requires a person to possess the original note.  No

Washington court has addressed this particular issue, but it has been widely rejected by other

jurisdictions.  For example,

> Diessner does not cite, nor is the court aware of, any controlling
> authority providing that the cited UCC section applies in non-
> judicial foreclosure proceedings in Arizona. To the contrary,
> district courts "have routinely held that Plaintiff's 'show me the
> note' argument lacks merit."[20]  Furthermore, Arizona's non-judicial

---

[19] See Declaration of David A. Weibel, Exhibit E.

[20] *Mansour v. Cal-Western Reconveyance Corp.,* No. CV-09-37-PHX-DGC, 2009 WL 1066155, at *2 (D.Ariz. April 21, 2009) (citing *Ernestberg v. Mortgage Investors Group,* No. 2:08-cv-01304-RCJ-RJJ, 2009 WL 160241, at *5 (D.Nev. Jan.22, 2009); *Putkkuri v. Reconstruct Co.,* No. 08cv1919 WQH (AJB), 2009 WL 32567, at *2 (S.D.Cal. Jan. 5, 2009); *San Diego Home Solutions, Inc. v. Reconstruct Co.,* No. 08cv1970 L(AJB), 2008 WL 5209972, at *2 (S.D.Cal. Dec. 10, 2008); *Wayne v. HomEq Servicing, Inc.,* No. 2:08-cv-00781-RCJ-LRL, 2008 WL 4642595, at *3 (D.Nev. Oct.16, 2008)).

Diessner v. Mortgage Electronic Registration Systems  2009 WL 1457624, 5 (D.Ariz.) (D.Ariz.,2009)

MOTION TO DISMISS - 24

foreclosure statute does not require presentation of the original note before commencing foreclosure proceedings. A.R.S. § 33-807. Because this action involves the non-judicial foreclosure of a real estate mortgage under an Arizona statute which does not require presentation of the original note before commencing foreclosure proceedings, count one of plaintiff's complaint fails to state a claim upon which relief may be granted.

*Diessner v. Mortgage Electronic Registration Systems*, 2009 WL 1457624, 2 (D.Ariz., 2009). Furthermore, the Revised Code of Washington does not even have a Uniform Commercial Code § 3-309. Simply put, there is no authority for a requirement.

## V.    CONCLUSION

For the reasons given, the FDIC-Receiver respectfully requests that this Court dismiss Plaintiff's complaint with prejudice.

DATED this 23rd day of March 2010.

BISHOP, WHITE & MARSHALL, P.S.

 /s/ David A. Weibel
David A. Weibel, WSBA #24031
Attorneys for Defendant FEDERAL DEPOSIT
INSURANCE CORPORATION (FDIC) IN ITS
CAPACITY AS RECEIVER FOR INDYMAC FSB

BISHOP, WHITE & MARSHALL, P.S.
720 OLIVE WAY, SUITE 1301
SEATTLE, WASHINGTON 98101-1801
206/622.5306 FAX:206/622-0354