UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| KATHI M. WALLIS,<br><br>        Plaintiff,<br><br>   v.<br><br>INDYMAC FEDERAL BANK; WELLS FARGO BANK; REGIONAL TRUSTEE SERVICES CORPORATION; AND JOHN DOE,<br><br>        Defendants. | CASE NO. C09-5500-BHS<br><br>ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT |

This matter comes before the Court on Defendant Federal Deposit Insurance Company's ("FDIC") unopposed motion to dismiss or, alternatively, for summary judgment (Dkt. 11) and Defendant Wells Fargo Bank's ("Wells Fargo") unopposed motion for summary judgment (Dkt. 14). The Court has considered the pleadings filed in support of the respective motions and the remainder of the file and hereby grants the motions for the reasons discussed herein.

## I. PROCEDURAL HISTORY

On March 19, 2009, Wallis filed her complaint against the above-captioned Defendants. Dkt. 1 at 7. On August 14, 2009, the matter was removed to federal court. *Id.* at 1. On March 23, 2010, FDIC filed its motion to dismiss or, in the alternative, for

ORDER - 1

summary judgment on behalf of Defendant IndyMac Federal Bank ("IndyMac"). Dkt. 11. On March 24, 2010, Wells Fargo filed its summary judgment motion. Dkt. 14. Wallis did not timely respond to either motion. On May 5, 2010, FDIC filed its reply brief on behalf of IndyMac. Dkt. 15. On May 10, 2010, Wells Fargo filed its reply brief. Dkt. 16. On May 24, 2010, Wallis filed her response to the summary judgment motions. Dkt. 20. On May 27, Wallis also filed a response to the FDIC's motion to dismiss or alternatively for summary judgment (Dkt. 11). Dkt. 23 (Although Wallis styled this pleading as a "reply," it was a response in opposition to a motion to dismiss).

To date, Wallis' pleadings in opposition have been deficient, in that she has not filed any affidavits or documents in support of her responses. Accordingly, on May 26, 2010, the Court noticed Wallis to this effect pursuant to *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998). Dkt. 22[1] (ordering Wallis to file a properly supported response and informing her that failure to do so may result in dismissal). Wallis did not file a response. On June 7, 2010, the Court struck the pretrial conference and issued a minute order informing the parties that this matter would be resolved on summary judgment. Dkt. 24.

## II. FACTUAL BACKGROUND

This matter involves a challenge to the foreclosure on Wallis' home. *See* Complaint; *see also* Declaration of David A. Weibel (Weibel Decl.), Ex. D (notice of trustee's sale). On February 6, 2007, Wallis entered into and subsequently defaulted upon a loan agreement for $577,000. *Id.*, Ex. A; *see also, e.g.,* Ex. C. On November 25, 2008, the deed of trust for this loan was assigned to IndyMac, recorded on December 5, 2008. *Id.,* Ex. B (assignment of deed of trust). Also on November 25, 2008, IndyMac initiated a nonjudicial foreclosure of the Wallis property, recorded on December 5, 2008. On

---

[1] Although Wallis filed a response following this notice, it did not take the notice into consideration. *See* Dkt. 23 (filing a response that included only conclusory allegations).

ORDER - 2

December 24, 2009, Wallis was noticed that the trustee's sale of her home would occur on March 27, 2009. *Id*., Ex. D.

IndyMac failed as a bank. *See* Ex. F at 1. FDIC was appointed the receiver for IndyMac on July 11, 2008. Dkt. 1 ¶ 1 (notice of removal). By letter dated July 22, 2009, the FDIC informed Wallis that they had closed IndyMac and taken it into receivership. Ex. F at 1 (informing Wallis of the steps to take if she had a claim against the failed IndyMac). The Board of Directors for the FDIC determined that the IndyMac receivership held "insufficient assets . . . to satisfy deposit liabilities in full, [therefore,] there will be no distributions on claims in the general liability class (or any lower priority classes) . . . ." *Id*, Ex. N at 3.[2] The FDIC published this worthlessness determination in the federal register. *Id.,* Ex. O at 2. Because Wallis fell into a class of unsecured creditors that would not receive a distribution on claims, the FDIC informed Wallis of this fact by letter dated January 14, 2010. *Id*., Ex. I at 2.

On March 19, 2009, Wallis brought suit against the above-captioned Defendants by filing her complaint, apparently in an effort to enjoin the foreclosure action against her property located at "13816-65th Ave. NW, Gig Harbor, WA 98332, tax parcel No. 012224-206-4 . . . ." Complaint at 7. In Wallis' complaint she asserted concern over whether the entity foreclosing on her property had legitimate possession of the original note, which bore the name of the person owing the money. *Id.* at 8. Wallis further alleged that she believed the "original loan violated the Truth in Lending Act" (TILA). These are the extent of the allegations made by Wallis, which are not supported by any documentation other than the complaint and pleadings in opposition to summary judgment. *See generally* Complaint. Additionally, Wallis complained about removal to

---

[2]Board of Directors determined that the total assets of IndyMac was $63.131 million and the total deposit liabilities was $8.738 billion, further concluding that the receivership assets equaled $5.285 billion and the expenses of the receivership equaled $7.964 billion. In short, liabilities greatly exceeded assets, i.e., Indymac was worthless. *See* Weibel Decl., Ex. N.

ORDER - 3

federal court in her latest deficient response (Dkt. 23); however, she does not assert any grounds on which removal was improper.

### III. DISCUSSION

**A.    Local Rule 7(b)(2)**

When a party "fails to file papers in opposition to a motion, such failure may be considered by the court as an admission that the motion has merit. Local Rule 7(b)(2). When the opposing party is proceeding *pro se*, as is the case here, some additional latitude is afforded to the *pro se* litigant.

Therefore, because Wallis is proceeding *pro se*, the Court carefully considered the basis on which Wells Fargo and the FDIC support their motions and whether such bases are meritorious.

**B.    The FDIC's Motion to Dismiss**

**1.    Subject Matter Jurisdiction under 12(b)(1)**

The FDIC moves the Court to dismiss Wallis' claim under Federal Rule of Civil Procedure 12(b)(1), which provides that a court may dismiss a claim for "lack of jurisdiction over the subject matter[.]" Fed. R. Civ. P. 12(b)(1). The FDIC argues that Wallis did not exhaust the claims process as set forth in 12 U.S.C. § 1821(d)(3)-(13). Congress granted the FDIC authority to act as receiver for failed banks and, when acting as such, tasked it with managing the failed banks' assets and its distributions to legitimate depositors and creditors. *See* 12 U.S.C. §§ 1821(d)(2)(A)(ii); 1821(d)(2)(B) & (E); *see also* Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub. L. No. 101-73, 103 Stat. 183 ("FIRREA").

Under FIRREA, Congress established a means for the processing of claims, including those like Wallis'. *See* 12 U.S.C. § 1821(d)(3) - (13). This section requires all claims to be submitted to the FDIC within 90 days of the FDIC's mailing of a claims form. 12 U.S.C. § 1821(d)(3)(B). The FDIC will have 180 days to review and resolve

ORDER - 4

such a claim without resorting to litigation. *See* 12 U.S.C. § 1821(d)(5)(A)(i). During this mandatory claims process, the courts do not have jurisdiction over such claims. *See McCarthy v. FDIC*, 348 F.3d 1075, 1077 (9th Cir. 2003) (noting that jurisdiction by courts may be asserted over such claims "after the administrative claims process has been completed").

Here, it does not appear from the record that Wallis ever instituted the mandatory claims process, even though she was notified of the need to do so by the FDIC on July 22, 2009. As a result, Wallis failed to exhaust her remedies under the mandatory administrative claims process. Accordingly, the Court lacks subject matter jurisdiction to hear this matter and dismisses the case with prejudice.

**2.    Prudential Mootness**

Two varieties of mootness exist: Article III mootness and prudential mootness. Under Article III, section 2 of the United States Constitution, federal courts have jurisdiction to adjudicate only actual "Cases" or "Controversies." U.S. CONST., art. III, § 2, cl. 1. "[A]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Seven Words LLC v. Network Solutions*, 260 F.3d 1089, 1095 (9th Cir. 2001) (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997)); *see also Cook Inlet Treaty Tribes v. Shalala*, 166 F.3d 986, 989 (9th Cir. 1999) ("The twin pillars of standing and 'case or controversy' go to the heart of Article III jurisdiction. The corollary to these principles is that federal courts have no jurisdiction to hear a case that is moot, that is, where no actual or live controversy exists"); *Rosetti v. Shalala*, 12 F.3d 1216, 1223 (3rd Cir. 1994) ("Article III does not permit federal courts to decide moot cases").

"On the other hand, prudential mootness, '[t]he cousin of the mootness doctrine, in its strict Article III sense, is a melange of doctrines relating to the court's discretion in matters of remedy and judicial administration.'" *Ali v. Cangemi*, 419 F.3d 722, 724 (8th

Cir. 2005) (en banc) (quoting *Chamber of Commerce v. United States Dep't of Energy*, 627 F.2d 289, 291 (D.C. Cir. 1980)). "Even if a court has jurisdiction under Article III to decide a case, prudential concerns may militate against the use of judicial power, i.e., the court 'should treat [the case] as moot for prudential reasons.'" *Cangemi*, 419 F.3d at 724 (quoting *United States v. (Under Seal)*, 757 F.2d 600, 603 (4th Cir. 1985)).

"Under the doctrine of prudential mootness, there are circumstances under which a controversy, not constitutionally moot, is so 'attenuated that considerations of prudence and comity for coordinate branches of government counsel the court to stay its hand, and to withhold relief it has the power to grant.'" *Fletcher v. United States*, 116 F.3d 1315, 1321 (10th Cir. 1997) (quoting *Chamber of Commerce*, 627 F.2d at 291). "Where it is so unlikely that the court's grant of [remedy] will actually relieve the injury, the doctrine of prudential mootness – a facet of equity – comes into play. This concept is concerned, not with the court's power under Article III to provide relief, but with the court's discretion in exercising that power." *Penthouse Int'l, Ltd. v. Meese*, 939 F.2d 1011, 1019 (D.C. Cir. 1991).

The Ninth Circuit has never adopted or rejected the doctrine of prudential mootness. In *Hunt v. Imperial Merchant Services, Inc.*, 560 F.3d 1137 (9th Cir. 2009), the court alluded to the doctrine in rejecting an assertion of anticipatory mootness, i.e, an argument that an appeal might become moot because of an impending decision in another appeal. *Id.* at 1142. The Ninth Circuit held that it need not "dismiss a live controversy as moot merely because it may become moot in the near future"; it noted, however, that "[p]erhaps some cases that are 'anticipatorily moot' might permissibly be dismissed [based on the] doctrine of 'prudential mootness,' adopted by some of our sister circuits, under which a court can dismiss an appeal not technically moot if 'circumstances [have] changed since the beginning of litigation that forestall any occasion for meaningful

ORDER - 6

relief.'" *Id.* (quoting *S. Utah Wilderness Alliance v. Smith*, 110 F.3d 724, 727 (10th Cir. 1997), and citing *Chamber of Commerce*, 627 F.3d at 291).

The prudential mootness doctrine has been adopted by the First, Third, Fourth, Fifth, Sixth, Eighth, Tenth, and D.C. Circuits; no circuit or district court has rejected it. See *F.D.I.C. v. Kooyomjian*, 220 F.3d 10, 14-15 (1st Cir. 2000) (affirming the dismissal of § 1821(d) claims under the doctrine of prudential mootness); *Sierra Club v. U.S. Army Corps of Engineers*, 277 Fed. Appx. 170, 172-73 (3d Cir. 2008) (Unpub. Disp.) ("The central question in a prudential mootness analysis is 'whether changes in circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief,'" quoting *Int'l Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers v. Kelly*, 815 F.2d 912, 915 (3d Cir. 1987)); *(Under Seal)*, 757 F.2d at 603 (a court may treat a case "as moot for prudential reasons," including the court's "inability to given an effective remedy under the circumstances now developed and with the imprudence of deciding on the merits a difficult and sensitive constitutional issue whose essence has been at least substantially altered by supervening events; which is not likely to recur in its original form in respect of these appellees; and which in its altered form is now subject to determination in a more appropriate forum and litigation setting"); *281-300 Joint Venture v. Onion*, 938 F.2d 35, 38 (5th Cir. 1991) (dismissing "on prudential grounds" where "there will never be any assets with which to satisfy a judgment"), *cert. denied*, 502 U.S. 1057 (1992); *Greenbaum v. U.S.E.P.A.*, 370 F.3d 527, 534-35 (6th Cir. 2004) ("Under the doctrine of prudential mootness, we decline to reach the specific issue of whether Ohio's NSR program should have been fully approved prior to redesignation as the circumstances have changed, and we can no longer afford petitioners any meaningful relief on this point"); *see also Cangemi*, 419 F.3d at 724; *S. Utah Wilderness Alliance*, 110 F.3d at 727; *Penthouse Int'l*, 939 F.2d at 1019.

In addition, courts within the Ninth Circuit have consistently held that prudential mootness is a viable doctrine. *E.g., In re Nelson*, 391 B.R. 437, 443 (B.A.P. 9th Cir. 2008) ("The test for prudential mootness of an appeal is whether the appellate court can grant the appellant any effective relief in the event that it decides the matter on the merits in its favor"); *Sierra Club v. Babbitt*, 69 F. Supp. 2d 1202, 1244 (E.D. Cal. 1999) (applying the doctrine of prudential mootness, and quoting *S. Utah Wilderness Alliance*, 110 F.3d at 727-78).

The First, Fifth, and Eighth Circuits have applied prudential mootness in circumstances identical to those that confront the court here. In *Kooyomjian*, following publication in the Federal Register of a decision by the FDIC that the claims of "unsecured creditors could not be satisfied out of [the bank's] receivership assets and were therefore worthless," the First Circuit held that, even were plaintiffs to prevail on their claim that the bank made negligent misrepresentations before its failure, recovery was unavailable "in light of [the] FDIC's worthlessness determination." *Kooyomjian*, 220 F.3d at 13. *See also id.* at 15 ("The FDIC's worthlessness determination is unchallenged and . . . precludes any relief for defendants even it they were successful on their negligence claim and obtained a favorable judgment").

In the present matter, the FDIC determined IndyMac-Receivership to be worthless and that its unsecured creditors, like Wallis, could not recover. *See* Ex. O at 2 (publication of worthlessness determination in the federal register). This fact renders Wallis' claim moot under the prudential mootness doctrine. *See First Indiana Federal Savings Bank v. FDIC*, 964 F.2d 503, 507 n. 7 (5th Cir. 1992) ("The FHLBB's worthlessness determination not only established the value of First Indiana's unsecured claims, it also binds the courts hearing actions on those claims"). As a practical matter there is no purpose in requiring adjudication of this case on the merits. *See id.*

To the extent Wallis pleads a § 1821(d) cause of action, that claim is prudentially moot. The deciding factor in all reported cases is the inability of the court to provide an effective remedy. Because the Court could not provide meaningful relief even were it to render judgment in favor of Wallis' § 1821(d) claim, the Court dismisses that claim under the doctrine of prudential mootness.

### 3. Promissory Note

In her complaint, Wallis contends that the Uniform Commercial Code (UCC) § 3-309 was violated because it was not proven that the foreclosure trustee possessed the original note and deed of trust. Complaint at 2.

However, as this Court has concluded before, courts "have routinely held that [Wallis'] so called 'show me the note' argument lacks merit." *Freeston v. Bishop, White & Marshall, P.S.*, 2010 WL 1186276 (W.D. Wash, 2010) (quoting *Diessner v. Mortgage Electronic Registration Systems*, 618 F. Supp. 2d 1184, 1187 (D. Ariz. 2009) (collecting cases)). The Court finds that Wallis has failed to state a plausible claim for relief based on Defendants' alleged failure to produce the original promissory note. Therefore, the Court dismisses this claim.

Therefore, even if summary judgment was not proper for the reasons previously discussed, summary judgment is granted in favor of the FDIC and Wells Fargo on this issue.

### 4. Conclusion

For the foregoing reasons, Wallis' claims are dismissed. Even if these reasons were insufficient to dismiss Wallis' claims, other reasons are present to dismiss this matter on summary judgment, see below.

## C. Summary Judgment Under Fed. R. Civ. P. 56

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material

fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra)*. Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**D.     Wells Fargo's and the FDIC's Motions for Summary Judgment**

**1.     TILA**

**a.     The FDIC's Receivership Defenses**

Although Wallis has not specifically alleged a TILA violation, it appears to be at least a basis on which she premises this lawsuit. *See generally* Complaint. The FDIC argues that Wallis' TILA claim cannot be asserted against the FDIC because it is an involuntary assignee.

15 U.S.C. § 1641(a) provides as follows:

> Except as otherwise specifically provided in this title [15 U.S.C. §§ 1601 et seq.], any civil action for a violation of this title [15 U.S.C. §§ 1601 et seq.] or proceeding under section 108 [15 U.S.C. § 1607] which may be brought against a creditor may be maintained against any assignee of such creditor only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement, *except where the assignment was involuntary*.

(Emphasis added).

The Court agrees that § 1641(a) limits assignee liability. Indeed, the FDIC was required to accept its appointment as receiver for IndyMac under 12 U.S.C. § 1821(c)(2)(A)(ii). *See FDIC v. Bank of Boulder*, 911 F.2d 1466, 1470 (9th Cir. 1990) (when the "FDIC is tendered the appointment as Receiver, it is statutorily obligated to accept the appointment").

Because the FDIC's receivership was involuntary, Wallis cannot plead any set of facts on which to premise a TILA claim against the FDIC.[3] Therefore, even if summary judgment was not proper for the reasons previously discussed, summary judgment is granted in favor of the FDIC on this issue.

---

[3] To the extent Wallis seeks an equitable remedy, like rescission, against the FDIC, such an action is also prohibited. *See* 12 U.S.C. § 1821(j) (prohibiting courts from granting relief of rescission against FDIC as receiver). This is another basis on which the FDIC prevails in its summary judgment motion.

ORDER - 11

### b. Statute of Limitations

Claims for damages under TILA are subject to a one-year statute of limitations. 15 U.S.C. § 1640(e) ("Any action under this section may be brought . . . within one year from the date of the occurrence of the violation.") Absent equitable tolling, the statute of limitations begins on the date the loan transaction is consummated. *King v. State of California*, 784 F.2d 910, 915 (9th Cir. 1986). Both the FDIC and Wells Fargo argue that the statute of limitations has run on Wallis' claims.

Wallis' loan was consummated on February 6, 2007, which is more than two years prior to her commencing this action on March 19, 2009. Wallis has not produced, and the Court does not find, any evidence that would suggest equitable tolling is in order in this matter.

Therefore, even if summary judgment was not proper for the reasons previously discussed, summary judgment is granted in favor of the FDIC and Wells Fargo on this issue.

### c. Pleading Deficiency

Wells Fargo moves for summary judgment on the basis that Wallis' complaint does not present any "evidence from which a reasonable fact-finder could find" for Wallis on her apparent TILA claim. Dkt. 14 at 5. Wallis' complaint simply states that she "believes the original loan violated [TILA]" and that she "plans on proving such in court." Complaint at 3. As Wells Fargo correctly notes, such pleadings are insufficient. Further, the Court noticed Wallis to correct this deficiency *(see* Dkt. 22), and she did not do so. The Court concludes that no material issue of fact remains regarding Wallis' TILA claim.

Therefore, even if summary judgment was not proper for the reasons previously discussed, summary judgment is granted in favor of the FDIC and Wells Fargo on this issue.

### 2. Waiver

Both the FDIC and Wells Fargo argue that Wallis waived any claims she may have had when she failed to enjoin the trustee's sale. When a borrower fails to enjoin the trustee's sale as provided under RCW 16.124.130, the borrower waives his/her claims with respect to the underlying obligation or the foreclosure process. *Brown v. Household Realty Corp.*, 146 Wn. App. 157, 160 (2008).

In the present matter, the trustee's sale occurred on March 27, 2009, but Wallis instituted this action on March 19, 2009. *See* Complaint; *see also* Weibel Decl., Ex. D. Wallis was on notice of the trustee's sale as early as December of 2008, well in advance of filing this action and before the actual sale. *See id*. Because Wallis failed to enjoin the trustee's sale, she is barred from bringing post-sale claims regarding the nonjudicial foreclosure of her home.

Therefore, even if summary judgment was not proper for the reasons previously discussed, summary judgment is granted in favor of the FDIC and Wells Fargo on this issue.

### 3. Conclusion

Fore the foregoing reasons, even if Wallis' claims could survive dismissal under section A, above, the Court concludes that Wallis' claims are dismissed on summary judgment.[4]

---

[4] Given the record before the Court, the disposition of this matter would have been the same even if Wallis had submitted a proper response in opposition to the FDIC's and Wells Fargo's motions to dismiss or, alternatively, for summary judgment.

ORDER - 13

## IV. ORDER

Therefore, it is hereby

**ORDERED** that the FDIC's unopposed motion to dismiss or, alternatively, for summary judgment (Dkt. 11) and Wells Fargo's unopposed motion for summary judgment (Dkt. 14), are **GRANTED** as discussed herein.

DATED this 8th day of June, 2010.

                                                                         *[signature]*
                                                                         BENJAMIN H. SETTLE
                                                                         United States District Judge

ORDER - 14